**Daniel W. SHELLEY, et al., Plaintiffs,**

v.

**TRAFALGAR HOUSE PUBLIC LIMITED COMPANY, et al., Defendants.**

**Civil No. 91–1213(DRD).**

United States District Court,
D. Puerto Rico.

March 11, 1996.

**518**

John F. Malley–Vega, McConnell Valdes, San Juan, PR, for Daniel W. Shelley, S. Shelley, Puerto Del Rey Inc. and Medio Mundo Corp.

Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Theodore J. Theophilos, John G. Hutchinson, Elizabeth M. Sacksteder, Sidley & Austin, New York City, for Trafalgar House Public Limited, Trafalgar House Corporate Development Ltd., Trafalgar House Real Estate Inc., Cementation International Ltd., Federal Construction Inc. and Trafalgar House Construction Holding Ltd.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

 Pending before the Court is Defendant Trafalgar House Public Limited Company's ("Trafalgar") Motion to Dismiss (Docket No. 7) which has been converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(6) [1], Plaintiff Shelley's Opposition thereto (Docket No. 14), and Defendants' Reply Memorandum (Docket No. 18). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (1988).

### I. Introduction

The present action is for monetary damages, resulting from Defendants' alleged

---

1. Fed.R.Civ.P. 12(b) provides in pertinent part that "If, on motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Although the rule also provides the parties with a reasonable opportunity to present pertinent materials regarding the motion, "this circuit does not mechanically enforce this requirement...." *Chaparro–Febus v. International Longshoremen Ass'n, Local 1575,* 983 F.2d 325, 332 (1st Cir.1992). This is true in circumstances where the parties have received all of the opponent's materials and "not controverted their accuracy." *Id.* at 332. The plaintiffs have had four years from the filing of the motion to the present to file additional documentation and this constitutes a reasonable opportunity.

breach of contract and tortious conduct. Plaintiffs claim that both parties entered into an agreement to form a joint venture and that ultimately Defendant breached said agreement. In the alternative, Plaintiffs allege that Defendants are liable for either *culpa in contrahendo* or promissory estoppel. Plaintiffs are Daniel W. Shelley and S.W. Shelley ("Shelleys"); Puerto del Rey, Inc. ("PDR"); and Medio Mundo Corporation ("MMC"). Defendants are Trafalgar House Public Limited Company ("Trafalgar House"); Trafalgar House Construction Holding Limited; Trafalgar House Corporate Development; Federal Construction, Inc. ("FC"); Cementation International Limited ("CIL"); and Trafalgar House Real Estate, Inc.

Defendants have asserted the following four reasons for dismissal: (1) the initial agreement was not binding on the parties; (2) the initial agreement was too vague to be enforceable; (3) the alleged tort is inapplicable; and (4) the alleged tort is time barred. For the reasons set forth below, the motion to dismiss, converted into a motion for summary judgment, is hereby GRANTED in part and DENIED in part.

## II. Factual Background [2]

In February 1988, Defendants approached Plaintiffs expressing an interest in Plaintiffs' development, involving a marina village located at Puerto del Rey, Fajardo. Plaintiffs, at that time, intended to build a marina, an inn, a condominium, as well as a commercial area on the premises. Defendants envisioned a larger resort and, in March of 1988, Trafalgar House and Mr. Siskind, an architect, submitted to Plaintiffs a plan for the resort.[3] Subsequently, Plaintiffs accepted Trafalgar House's plan, discontinued construction because of the elimination of the condominium, and designated Trafalgar House as the resort developer. At the behest of Trafalgar House, Plaintiffs retained Mr. Siskind for the new plan, although a considerable investment had already been incurred on the initial plans' architectural fees. Trafalgar House also required that its own company construct the resort. In July 1988, Trafalgar House proposed to carry out the entire resort project, including financing. Further, Trafalgar House agreed to purchase a two (2) million dollar equity participation if given the turnkey and management contracts for the resort project. Trafalgar House also induced Plaintiffs to purchase additional land to accommodate the expansion of the resort.[4]

On October 31, 1988, Plaintiffs delivered an irrevocable letter of credit and other down payments for the purchase of additional land. Plaintiffs and Defendants negotiated with banks and hotel management groups for the development of the resort. Subsequently, in April of 1989, a bank provided a fifty (50) million dollar credit facility for the development which Plaintiffs accepted by paying a one hundred fifty (150) thousand dollar commitment fee. The parties then signed a document entitled Joint Venture Agreement on October 24, 1989.[5] The Agreement included a choice of law clause, validity being one of the subjects at issue, designating New York law as applicable.

Soon thereafter, Defendants informed Plaintiffs that they were unable to proceed with the development but that they would find third parties to perform on their behalf. Plaintiffs then demanded that Defendants perform or compensate Plaintiffs for their losses. Subsequent negotiations followed including a February 12, 1990 proposal for a new agreement; notwithstanding these negotiations in a letter dated November 27, 1990

---

2. We examine the facts in the light most favorable to the nonmoving party. *LeBlanc v. Great American Insurance,* 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

3. The new plan eliminated the condominium.

4. Trafalgar House asserted to Plaintiffs that "we are currently in firm negotiations with a major European clearing bank with a view to securing the debt funding for the above project" and that it has "now been asked by the bank to demonstrate our consortium's likelihood of purchasing the additional land required to build the resort."

5. The document states that "it is the intention of the Shelleys and Trafalgar House respectively to endeavor to resolve all outstanding matters and to enter into a legally binding Shareholder's Agreement within the ninety (90) period...."

Trafalgar House terminated present and/or future negotiations.

## III. Summary Judgment Standard

 Both Plaintiffs and Defendants in their motions refer to documents (i.e., letters, agreements, etc.) outside the pleadings. Because the court shall consider these supplementary materials, the summary judgment standard is "both apposite and opportune." *See Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 19 (1st Cir.1992).[6]

 A district court may grant summary judgment when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313 (1st Cir.1995) (*citing Coyne v. Taber Partners I*, 53 F.3d 454 (1st Cir. 1995)). The intricacies and general standards of Rule 56, have been documented by the First Circuit Court in a "cascade of cases".[7] "Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial-worthy issue exists." *McCarthy*, 56 F.3d at 315 (*citing National Amusements*, 43 F.3d at 735). At this crux, we need say no more than that summary judgment will proceed if the record, even when taken in aspect most favorable to the nonmoving party, fails to yield a trial worthy issue as to some material fact.[8] *See Coyne*, 53 F.3d at 457.

 A material fact is one that might affect the outcome of the suit under the governing law. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Medina–Muñoz*, 896 F.2d at 8 (emphasis in original) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). *See also Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

 Hence, in applying these criteria, the Court is to consider that "not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law, if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir.) (citing *United States v. Plat 20, Lot 17*, 960 F.2d at 204), *cert. denied*, — U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995)).

---

6. "[T]he test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision." *Garita*, 958 F.2d at 19.

7. *See Coyne*, 53 F.3d at 457 (1st Cir.1995); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993); *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993); *United States v. Plat 20, Lot 17, Great Harbor Neck*, 960 F.2d 200, 204 (1st Cir.1992); *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 351–52 (1st Cir.1992); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115–16 (1st Cir.1990); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 7–8 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48–49 (1st Cir.1990).

8. Essentially, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient **to establish the existence of an element essential to that party's case,** and on which that party will bear the burden of proof at trial." (Emphasis added) *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (1986) (citations omitted). The nonmovant, moreover, may not rest upon mere denial of the pleadings. Fed.R.Civ.P. 56. *See Mottolo v. Fireman's Fund Ins. Co.*, 43 F.3d 723, 725 (1st Cir. 1995).

■ Consistent with the summary judgment standard, "we canvass the material facts in a light that flatters, but does not impermissibly distort", the nonmoving party's claims, and indulge all inferences in favor of that party.[9] Because in the instant case the record presents matters which are contested and disputed, our germane duty is then to ascertain their genuineness and materiality.

## IV. Choice of Law Clause

■ In a diversity case, the federal court must apply the choice of law of the forum state. *Jimenez Puig v. Avis Rent–A–Car Sys.*, 574 F.2d 37, 40 (1st Cir.1978). This Court must then analyze the validity of the choice of law clause under the laws of the forum state, Puerto Rico.

■ Defendants allege that the choice of law clause, designating New York law, is valid. This Court agrees that the clause in the Joint Venture Agreement is prima facie valid. Puerto Rico courts generally find choice of law clauses valid. *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184, 192 (1975), *rev'd on other grounds, World Films, Inc., et al. v. Paramount Pictures, Corp., et al.*, 90 J.T.S. 17 (1990); *Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc.*, 91 J.T.S. 69, 8855 (1991). However, the choice of law clause must meet the following two requirements: (1) "the chosen state has ... a substantial relationship to the parties or the transaction and there is a reasonable basis for the parties' choice" or (2) "application of the law of the chosen state would [not] be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflicts of Law § 187 (1988).

In Puerto Rico as to choice of forum law, courts do not hesitate to rely upon the Re-

statement of the Conflicts of Law. *See A.M. Capen's Co. v. American Trading & Prod. Corp.*, 74 F.3d 317 (1st Cir.1996); *Viuda de Fornaris v. American Surety Co. of N.Y.*, 93 D.P.R. 29 (1966); *Bonn v. Puerto Rico Int'l Airlines, Inc.*, 518 F.2d 89 (1st Cir.1975); *Rodriguez v. American Airlines, Inc.*, 886 F.Supp. 967 (D.P.R.1993). The Puerto Rico Supreme Court has specifically stated that substantial contacts are necessary to enforce choice of law clauses. *Walborg*, 104 D.P.R. at 192 ("The choice of law clauses are usually valid when the selected jurisdiction has substantial contacts with the contract.") (our translation); *Unysis*, 61 J.T.S. at 8855 (reiterating the necessity for substantial contacts between the chosen jurisdiction and the contract).

■ The parties in the joint venture explicitly agreed to be bound by the choice of law clause in the joint venture agreement. The agreement provides that "[paragraph] 24—this letter shall be subject to and construed in accordance with the laws of the State of New York.... For the avoidance of doubt it is confirmed that paragraphs 22, 23, 24, and 25 above shall be binding on the parties." Upon careful review of the facts, this Court also finds that there are substantial contacts with New York. In Defendants' Reply Memorandum,[10] Defendants delineate the contacts with New York and a reasonable basis for choosing New York: (1) negotiations took place in New York; (2) the prospective lender is located in New York; (3) the Shelleys do business in New York; and (4) Trafalgar House, an English corporation, refused to be bound by unfamiliar laws of a foreign jurisdiction.[11]

■ New York law will be applicable only to the contractual causes of action. This Court will adhere to the reasoning of many jurisdictions which have held that contractual choice of law clauses do not encompass tort

---

**9.** *See Martinez*, 54 F.3d at 984; *Le Blanc*, 6 F.3d at 841; *Mottolo*, 43 F.3d at 725; *Libertad*, 53 F.3d at 435.

**10.** The Court credits Defendants' Memorandum although the issue is not completely foreclosed.

**11.** The courts emphatically accept choice of law clauses and will rarely find them invalid so long

as there is no conflict with the forum's public policy and some contact or a reasonable basis. *See Unysis*, 91 J.T.S. at 8855; *McCarthy v. Azure*, 22 F.3d 351, 356 n. 5 (1st Cir.1994); *Royal Bed & Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 52–53 (1st Cir.1990).

causes of action. *See Consolidated Data Term. v. Applied Digital Data Sys.*, 708 F.2d 385, 390 n. 3 (9th Cir.1983); *Invacare Corp. v. Sperry Corp.*, 612 F.Supp. 448, 451 n. 4 (D.Ohio 1984). Even under New York law contractual choice of law clauses do not encompass tort claims. *Computerized Radiological Servs. v. Syntex Corp.*, 595 F.Supp. 1495, 1503 (E.D.N.Y.1985), *modified on other grounds*, 786 F.2d 72 (2d Cir.1986). Moreover, only the letter was subject to New York jurisprudence. Plaintiffs have alleged both breach of contract and tortious conduct. The substantive law of Puerto Rico will then govern the tort claim in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir.1994); *Coyne*, 53 F.3d at 457.

## V. Breach of Contract

 Defendant alleges that there was no breach of contract because the terms of the agreement were too vague to be enforceable and the agreement did not bind the parties. Agreements that have incomplete terms and explicitly state that the parties are not bound is not an enforceable contract. *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989) (finding that a memorandum was not an enforceable contract when there existed open terms and reference to a future binding agreement); *Teachers Ins. & Annuity Ass'n of America v. Tribune Co.*, 670 F.Supp. 491, 497 (S.D.N.Y.1987) ("A primary concern for courts in [these] disputes is to avoid trapping parties in surprise contractual obligations that they never intended.").

 In the instant case, the joint venture agreement left open terms and explicitly stated that it was not binding.

> It is not possible at this time to enter into a totally binding agreement because there are a number of matters ... which have still to be clarified to our satisfaction.... [I]t is the intention of the [parties] to endeavour to resolve all outstanding matters and to enter into a legally binding Shareholders' Agreement within [90 days].

Joint Venture Agreement, p. 6. The parties clearly did not intend to be bound by this Agreement. This Court finds under New York law that there was no binding contractual obligation and hereby GRANTS the motion for summary judgment for the breach of contract claim. *See Arcadian Phosphates, Inc.*, 884 F.2d at 72; *Teacher's Ins. & Annuity Ass'n of America*, 670 F.Supp. at 498.

## VI. Good Faith Negotiations

 Plaintiffs allege in the Amended Complaint that Defendants are liable for breach of good faith during negotiations. Notwithstanding the choice of law clause, Plaintiffs can bring a claim under either New York law (promissory estoppel) or Puerto Rico law (*culpa in contrahendo*). The choice of law clause does not encompass tort claims; tort claims must then be brought under the laws of the forum state. Promissory estoppel, a contractually based cause of action, falls within the purview of the choice of law clause. Although no New York court has explicitly stated that promissory estoppel is a contractual claim, courts have implied that it is contractual in nature. *Cf. In re Gulf Oil/Cities Service Tender Offer Lit.*, 725 F.Supp. 712, 735 (S.D.N.Y.1989) ("Promissory estoppel is a narrow doctrine designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement...."). In the alternative, Plaintiffs can bring a claim under Puerto Rican tort law for *culpa in contrahendo*. In the instant action, Plaintiffs have the opportunity to bring this type of claim under either New York or Puerto Rican law.

### a. New York Law

Defendants argue that New York law does not recognize a cause of action for *culpa in contrahendo*, breach of good faith during preliminary negotiations. A parallel cause of action recognized in New York is promissory estoppel, where a party relies on another party's explicit or implicit promise to negotiate in good faith. *See Producciones Tommy Muñiz, Inc. v. COPAN*, 113 D.P.R. 517, 530 (1982); *Arcadian Phosphates, Inc.*, 884 F.2d at 73.

 A promissory estoppel cause of action has three requirements:

(1) a clear and unambiguous promise;

(2) a reasonable and foreseeable reliance by the promisee; and

(3) an injury sustained by relying on the promise.

*Arcadian Phosphates, Inc.,* 884 F.2d at 73 (*quoting Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.,* 804 F.2d 787, 793 (2d Cir.1986).

 In New York, preliminary agreements which recognize the existence of open terms that remain to be negotiated while agreeing on certain terms do not bind the parties to those terms but rather bind parties to continue negotiations in good faith. *Teacher's Ins. & Annuity Ass'n of America,* 670 F.Supp. at 498. A breach of this good faith obligation satisfies the promissory estoppel requirement of a clear and unambiguous promise. *Arcadian Phosphates, Inc.,* 884 F.2d at 74.

 The allegations and supporting documentation set out the elements for a promissory estoppel claim. Both parties agreed to certain terms and to future negotiations. However, Defendants withdrew from these negotiations and the issue remains as to whether Plaintiffs relied on a promise by Defendants to negotiate in good faith. If there was reliance, Plaintiffs may have potentially sustained an injury resulting from the reliance. Therefore, in examining the facts in the light most favorable to the non-moving party,[12] the motion for summary judgment is hereby DENIED as to the promissory estoppel claim.

### b. Puerto Rico Law

 Notwithstanding the contractual choice of law clause, Puerto Rico law applies to the *culpa in contrahendo* tort claim. As previously discussed, various federal courts have found that only contractual claims are controlled by choice of law clauses. The doctrine of *culpa in contrahendo* is a cause of action founded in Puerto Rican tort law, binding parties to act in good faith during preliminary negotiations. 31 L.P.R.A. § 5141, *Producciones Tommy Muñiz, Inc.,* 113 D.P.R. at 529; *Torres v. Garcia,* 119 D.P.R. 698, 703 (1987). Today, this Court adheres to the theory that the choice of law clause does not encompass tort claims, particularly due to the fact that only the letter agreement was subject to New York laws.[13]

 Defendants argue that they are not liable for *culpa in contrahendo* because there was allegedly no duty to engage in continuing negotiations with Plaintiffs. "This [doctrine] stems from a recognition that while parties are free to consummate contracts or withdraw from negotiations, **an unjust withdrawal** during the pre-contractual phase may result in extra-contractual liability." *Satellite Broadcasting Cable, Inc., et al., v. Telefónica de España, et al.,* 807 F.Supp. 210, 217 (D.P.R.1992) (emphasis added). The cause of action does not obligate the parties to be bound to negotiate, but merely to act in good faith throughout the negotiations.

In *Tommy Muñiz,* Plaintiff, a television producer, submitted the highest bid to the Defendant, the Organizational Committee of the Eighth Panamerican Games ("COPAN"), for the exclusive rights to televise the Panamerican Games in Puerto Rico. 113 D.P.R. at 518. COPAN drafted a contract but disagreements arose regarding a clause which were not discussed in the initial negotiations. *Id.* at 519. COPAN and Tommy Muñiz held further negotiations to resolve these disagreements which resulted in seven other drafts. *Id.* Finally, COPAN decided to disavow its negotiations with Tommy Muñiz and provided the Government of Puerto Rico with the exclusive rights to televise the games. *Id.* at 521. The Puerto Rico Supreme Court found that although there was no contract, Defendants were liable under

---

**12.** *LeBlanc,* 6 F.3d at 841.

**13.** At the very least this matter involves "motive and/or intent." Trial courts have been admonished that "summary judgment should be used sparingly ... where motive and intent play leading roles." *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988) (citing *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)). *See also Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 107 (1st Cir.1988); *William Coll v. P.B. Diagnostic Sys., Inc.,* 50 F.3d 1115, 1121 (1st Cir.1995).

**524**

*culpa in contrahendo* for breach of good faith during negotiations. *Id.* at 531.

 Similarly, Plaintiffs and Defendants were negotiating a contract. The parties agreed to some initial terms. However, Defendants ended further negotiations with Plaintiffs before a contract was signed. Defendants have failed to establish that there was no breach of good faith during the withdrawal and as such the motion for summary judgment is hereby DENIED as to this cause of action.

### c. Statute of Limitations

 Defendant alleges that the *culpa in contrahendo* claim is time barred. The applicable statute of limitations for tort actions under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 is one year. 31 L.P.R.A. § 5298. Defendants incorrectly suggest that the period of limitations began to run in December 1989 when the Defendants initially advised Plaintiffs that they were unable to pursue with the Agreement. However, it is apparent from the pleadings that the statute of limitations did not begin to run at that time. Further negotiations pursued between both parties and it was not until November of 1990 that Defendants ultimately ended negotiations with Plaintiffs. At that moment, the statute of limitations began to run. This instant action is thus timely filed.

For the reasons set forth above, the Motion to Dismiss is therefore GRANTED in part and DENIED in part.

IT IS SO ORDERED.