Daniel W. SHELLEY, et al., Plaintiffs,

v.

TRAFALGAR HOUSE PUBLIC LTD. CO., et al., Defendants.

Civil No. 91–1213 (DRD).

United States District Court,
D. Puerto Rico.

June 4, 1997.

John F. Malley–Vega, McConnell Valdes, San Juan, PR, for Plaintiffs.

Theodore J. Theophilos, John G. Hutchinson, Elizabeth M. Sacksteder, Sidley & Austin, New York City, Salvador Antonetti-Zequeira, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION and ORDER

DOMINGUEZ, District Judge.

In the instant case, Plaintiffs'[1] request that the Court reconsider the Opinion and Order issued on March 11, 1996, partially denying and partially granting Defendants' motion. (Docket No. 83). Defendants[2] then filed an opposition to said motion for reconsideration (Docket No. 88) to which Plaintiffs replied. (Docket No. 100). After a careful reanalysis of the record and of the Court's March 11, 1996, Opinion and Order, the Court finds no merit to Plaintiffs' contentions and DENIES the motion for reconsideration.

1. Plaintiffs are Daniel W. Shelley, S.W. Shelley, Puerto del Rey, Inc., and Medio Mundo Corporation.

2. Defendants are Trafalgar House Public Limited Company, Trafalgar House Construction Holding Limited, Trafalgar House Corporate Development, Federal Construction, Inc., Cementation International Limited, Trafalgar House Real Estate, Inc.

3. Plaintiffs "are concerned" that the Court ignored their evidentiary submittals to oppose Defendants' motion to dismiss, which was later converted into a motion for summary judgment. Moreover, as proof of such concerns, Plaintiffs provide that this Court only mentioned the October 24, 1989, joint venture letter in the March 11, 1996, Opinion and Order and failed to mention any other document.

Although not obligated to, the Court entertains Plaintiffs' concerns. First, the Court need not perform the academic exercise of listing the documents it reviewed. Such an exercise would be completely unnecessary.

In the instant case, the parties do not suffer from writers' block, inclusive Plaintiffs, who submitted a seventy-three (73) page "statement" of contested facts and one hundred and eighteen (118) exhibits to support said "statement." As per this matter, such a comprehensive statement is hard to ignore and one which the Court entertained. Moreover, the facts were taken in the light most favorable to Plaintiffs and those facts are not merely those alleged (i.e. motion to dismiss standard), but those supported by affidavits, sworn statements, etc. *LeBlanc v. Great American Ins.*, 6 F.3d 836, 841 (1st Cir.1993), *cert.*

## FACTS

The object of the present motion for reconsideration revolves around a letter entitled "Joint Venture in Puerto Rico" ("joint venture letter"), dated October 24, 1989, signed by both parties. The issue is whether that agreement was or was not a contract between the parties.[3] Plaintiffs contend that both parties entered into a contract with Defendants and Defendants breached said contract.[4] The relationship between the parties commenced in February of 1988 when Defendants approached Plaintiffs regarding the development of a marina village. In the 1980's, Plaintiffs conceived this idea of a marina village and had, in fact, been working on developing this idea.[5] *See* Docket No. 54, p. 16. The following month Defendants submitted a plan for the marina village, which envisioned a "full-scale world class mega resort."[6] *See* Docket No. 54, p. 18. Then in July of 1988, Trafalgar House proposed to carry out the entire project. including financ-

denied, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). The Court in determining the facts of the case took into consideration all of the parties' submittals. *See Shelley v. Trafalgar House Public Ltd. Co.*, 918 F.Supp. 515 (D.P.R. 1996).

Unfortunately for Plaintiffs, on October 24, 1989, they signed a precontractual agreement and although they may now seek damages under the theory of *culpa in contrahendo* and/or promissory estoppel, the Court stands by the decision that there was no breach of contract because the October 24th joint venture letter was not a contract and the prior to signing evidence is paroled. *See Joseph Victori Wines, Inc. v. Viña Santa Carolina*, 933 F.Supp. 347, 352–53 (S.D.N.Y.1996). Consequently, the October 24th letter is the object of this suit and the focus of this Court's decision.

4. Alternatively, Plaintiffs contend that Defendants are liable for *culpa in contrahendo* and/or promissory estoppel. The Court previously determined that there were genuine issues of material fact as to whether Defendants were liable under these precontractual theories. That decision is not in dispute in the motion for reconsideration.

5. Construction began in 1987 with a scheduled completion date in December of 1988.

6. As per Plaintiffs, the original plan was revised from a commercial and residential village to instead a large waterfront commercial facility in front of the marina. *See* Docket No. 54, p. 24.

ing.[7] A year later and after the Shelleys had paid a $150,000 commitment fee to a bank, Trafalgar House submitted to the Shelleys "final, bound sets of the Turnkey and Construction Management contracts **to be executed along with the Shareholders Agreement....**" (Emphasis ours). *Id.* at 35.

On October 17, 1989, a draft of a formal "Heads of Agreement" was sent to the Shelleys in advance of negotiations that were to be held in London the following week.[8] As included in Plaintiffs' Statement of Triable Issues of Material Facts, Plaintiffs provide that they were unhappy with the October 17th draft agreement because the agreement did not "underscore" Trafalgar House's obligations. Moreover, the Shelleys would only deal exclusively with Trafalgar House if "there was a mutually *binding commitment* between the parties to secure those conditions and to close the new Shareholder Agreement within a short time...." *Id.* at 43. From October 17, 1989 to October 24, 1989, S.W. Shelley traveled to London to negotiate a final agreement with Defendants. Three other drafts were completed during that time, the last being the October 24, 1989, joint venture letter—the object of this Opinion and Order.

## ANALYSIS

The Court will begin by revisiting the analysis completed in the March 11, 1996, Opinion and Order, in which this Court found that the parties did not agree upon a binding joint venture as to the development of the marina project. Notwithstanding Plaintiffs' argument that the Court erred in granting summary judgment because of the general rule that issues of intent are for the fact finder, summary judgment was proper in the instant

case. Finally, Plaintiffs' contention that the joint venture letter is merely one of three contracts is unmeritorious. The Court AFFIRMS the previous decision that there was no breach of contract because a contractual agreement was not reached.

## I. Joint Venture Letter

**It is not possible at this time to enter into a totally binding agreement because there are a number of matters ... which have still to be clarified to our satisfaction.... [I]t is the intention of the [parties] to endeavor to resolve all outstanding matters and to enter into a legally binding Shareholders' Agreement within [90 days].**

*See* Docket No. 7, October 24, 1989, Joint Venture Letter.

■ The language included in the aforementioned paragraph strikes the Court in the same chord as the last time the Court examined this matter. The language of the preliminary agreement is clear. There was no contract, at most, the Court agrees with Plaintiffs that there are genuine issues of material fact as to whether there was an agreement to agree.

The joint venture letter provided a New York choice of law clause, which the Court found valid and enforceable. *See Trafalgar House,* 918 F.Supp. at 521. New York law provides that the joint venture letter does not constitute a contract.[9] In *Teachers Ins. & Annuity Ass'n of America v. Tribune Co.,* the court outlined the two types of binding preliminary agreements. 670 F.Supp. 491, 498 (S.D.N.Y.1987). *See also Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d

---

7. Although not relevant to the present breach of contract issue, the following facts also transpired but are relevant to the issue of precontractual liability. Apparently, if given the turnkey and management contracts of the resort project, Trafalgar House would agree to purchase a two (2) million dollar equity participation. *See* Docket No. 54, p. 20. In addition, Plaintiffs, at the behest of Defendants, purchased more land for the resort project.

8. Initially, Trafalgar House had sent the Shelleys a draft offer to purchase a majority equity position in the Puerto del Rey project. Then, in

response, on September 26, 1989. the Shelleys faxed Trafalgar House comments on said draft offer.

9. When stating that there was no contract, the Court is referring to the fact that there was no contract as to a joint venture as per the marina development project. As previously mentioned, the language in the last paragraph of the joint venture agreement alludes to a preliminary agreement which is a contract in and of itself; a contract to continue negotiations in good faith. *See Trafalgar House,* 918 F.Supp. at 522.

69, 72 (2d Cir.1989) (following the *Teachers Ins.* court's analysis of the two types of binding preliminary agreements); *P.A. Bergner & Co. v. Martinez,* 823 F.Supp. 151, 155 (S.D.N.Y.1993) (same). The first type, which is preliminary only in name and inapplicable to the present case, arises when the parties agree to the terms of the contract, "including the agreement to be bound." *Id.* This preliminary agreement constitutes a contract, "bind[ing] both sides to their ultimate contractual objective ... despite the anticipation of further formalities" and not merely a binding agreement to agree, as is possibly exemplified by the October 24th joint venture letter. *Id.* The second type of preliminary agreement merely binds parties to continue good faith negotiations to achieve a consensus as per open terms and "does not commit the parties to their ultimate contractual objective." *Id.* The joint venture letter falls within the latter type of preliminary agreement. There were open terms to be negotiated and the letter explicitly states that it is not binding.

## II. Summary Judgment Was Proper

Plaintiffs contend that the Court erred in granting summary judgment and finding that there was no joint venture contract. Plaintiffs maintain that there exist genuine issues as to the parties' intent when signing the October 24, 1989, joint venture letter. The argument follows the general rule that issues of intent should be left to the trier of fact and as such summary judgment should have been denied. The Court emphatically disagrees.

The Federal Rule of Civil Procedure 56(c) provides in pertinent part that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether the trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992). The Court must then perform a two prong analy-

sis to determine whether summary judgment is proper. First, is the contested fact material. A material fact is one that could affect the outcome of the suit under the governing law. The existence of such a fact precludes the entry of summary judgment. Factual disputes that are irrelevant to the suit's outcome are to be disregarded. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Second, the court must determine whether the dispute is genuine. A genuine issue is defined as a dispute when based on the evidence a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The First Circuit has advised district courts that they must proceed with caution when there exist issues of intent. *Coll v. P.B. Diagnostic Sys. Inc.,* 50 F.3d 1115, 1121 (1st Cir.1995). *See also Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 109 (1st Cir. 1988); *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir. 1983); *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988). Notwithstanding the First Circuit's advice to proceed with care, an issue of intent does not preclude summary judgment. "Even in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). The Court must still perform the aforementioned summary judgment analysis. In performing said analysis, this Court found and today affirms the decision that there exists no genuine issue as to the intent of the October 24, 1989 joint venture letter. The parties did not intend, as explicitly stated, to enter into a binding joint venture agreement at that time.

Moreover, as per New York law, the courts have stated that when intent is readily determined by the agreement then intent becomes a matter of law and appropriately decided at the summary judgment stage. *See Arcadian Phosphates,* 884 F.2d at 73. In the instant case, the parties' intent is readily apparent. Plaintiffs contend that ambiguity lies in the

last paragraph of the letter which states that "it is not possible at this time to enter into a totally binding agreement because there are a number of matters . . . still to be clarified to our satisfaction." Again, the Court finds no ambiguity; a contract was not conceived of at that time.[10] "[A] party that wishes to be bound can very easily protect itself **by refusing to accept language that shows an intent not to be bound.**" *Arcadian Phosphates,* 884 F.2d at 69. (Emphasis added).

### III. All-in-One Letter

Plaintiffs contend that the October 24, 1989, joint venture letter pertained only to equity participation, i.e. shareholders' agreement. Notwithstanding the fact that a shareholders' agreement was never finally drafted, as was contemplated in the joint venture letter, the parties had nonetheless previously entered into both a turnkey contract and construction management contract. As Plaintiffs argue, no contractual shareholders' agreement was breached in November of 1990 when Defendants decided to forgo further negotiations with Plaintiffs, but that day the other alleged contracts were breached. In sum, Plaintiffs allege that Defendants breached their contractual obligation "to undertake to carry out ourselves on your behalf [sic] the entire development." *See* Docket No. 100, p. 5.

This Court refuses to create new contracts where the intent of the parties was clear. The October 24, 1989, joint venture letter was an all-in-one letter contemplating the future execution of not only the equity participation of Trafalgar House but also the development, construction, management of the marina village project. All these terms were related, and the Court refuses to bind the parties to contracts that they explicitly stated they were not bound to.

Plaintiff alleges that notwithstanding the fact that a shareholder's agreement was never reached, there are material facts in controversy as to whether there existed construction management contracts and turnkey contracts. The Court differs. Plaintiffs themselves have provided submittals to this Court which clearly demonstrate that the construction management contracts and turnkey contracts depended on the execution of the shareholders' agreement. **"In June 1989, Trafalgar submitted to the Shelleys final, bound sets of the Turnkey and Construction Management contracts, to be executed along with the Shareholders Agreement formalizing the PRMR. Trafalgar prodded the Shelleys to sign the construction contracts *prior to* executing the Shareholders Agreement, but the Shelleys insisted on a comprehensive closing, including the execution of the partnership agreement as agreed and as contemplated under the B.V. loan terms."** *See* Docket No. 54, p. 35.

The Court agrees wholly with Defendants' logical conclusion that the joint venture letter encompassed the turnkey and construction management aspects of the marina village project and since no final contract was ever negotiated there was never a breach of contract. The joint venture letter provides that "[f]or the avoidance of doubt it is confirmed that paragraphs 22, 23, 24, and 25 above shall be binding on the parties."[11] Only the afore-

---

**10.** In the case where the "parties have committed themselves to some major terms, but some terms will remain to be negotiated," there is no contract as to the ultimate objective. At most there was an agreement to agree, "the parties can bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement. . . ." *Teachers Ins.,* 670 F.Supp. at 498.

**11.** The four paragraphs read as follows:

22. Pending the execution of the Shareholders' Agreement, the Shelleys undertake that neither they nor any of their associates will enter into any discussions or negotiations with any third party regarding the disposal of any interest in the Land without the prior written agreement of Trafalgar House. The Shelleys also undertake to disclose and to keep Trafalgar House informed of all material matters affecting the Land.

Trafalgar House undertakes that neither it nor its associates will during that period without the prior written consent of the Shelleys enter into discussions or negotiations with any third party regarding any hotel and/or residential project in Puerto Rico.

23. Each of Trafalgar House and the Shelleys shall bear all costs they incur in connection with the subsequent Shareholders' Agreement and any ancillary agreements.

mentioned paragraphs bound the parties on October 24, 1989. The parties failed to bind themselves contractually to the turnkey and construction management portion of the letter.[12] Today, the Court refuses to force the parties into areas they never intended to visit. The freedom **not to** contract should be protected with the same zeal as the freedom **to** contract.

**IT IS SO ORDERED.**

24. This letter shall be subject to and construed in accordance with the Laws of the State of New York.

25. Neither Trafalgar House nor the Shelleys will at any time disclose to any third party, without the prior written consent of the other, the negotiations between them or the contents of this letter.

*See* Docket No. 7, October 24, 1989. Joint Venture Letter.

12. As agreed by the parties, the joint venture letter is to be construed pursuant to New York law. New York jurisprudence recognizes the old maxim, *inclusio unius est exclusio alterius,* which properly exemplifies the terms of the joint venture letter. *See Woodmere Academy v. Steinberg,* 41 N.Y.2d 746, 395 N.Y.S.2d 434, 437–38, 363 N.E.2d 1169, 1172 (1977). "The inclusion of one is the exclusion of another." *Black's Law Dictionary* 763 (6th ed.1990). The parties specifically agreed on which paragraphs were to be binding, paragraph 22 to paragraph 25. The Court finds that the inclusion of the aforementioned paragraphs were to the exclusion of the other potential agreements to the joint venture.