**ADRIA INTERNATIONAL GROUP, INC. a Delaware Corporation, Criswell Associates, L.L.C. Plaintiffs**

v.

**FERRE DEVELOPMENT, INC., Angola Investment, Inc, Mar Chiquita Development Corp., and Does 1 Through 25, inclusive Defendants**

Civil No. 97–2869 (PG).

United States District Court,
D. Puerto Rico.

Nov. 22, 1999.

Santiago F. Lampon–Gonzalez, Guaynabo, Mark S. Priver, Ohashi & Priver, Pasadena, CA, for plaintiffs.

Etienne Totti–Del–Valle, Totti & Rodriguez Diaz, San Juan, PR, for defendants.

*OPINION & ORDER*

PEREZ–GIMENEZ, District Judge.

Adria International Group, Inc. and Criswell Associates, L.L.C. (collectively "Plaintiffs") brought suit against Ferre Development, Inc., Angola Investment, Inc., Mar Chiquita Development Corp., and Does 1–25 (collectively "Defendants") alleging breach of contract. (Dkt.1) Defendants counterclaimed, also alleging breach of contract. (Dkt.9) Plaintiffs and Defendants both filed motions for summary judgment, requesting the Court to find in their respective favors. (Dkts. 31 & 32)

The saga began innocently enough, with two parties, each with something the other desired: one with a parcel of valuable land and the other with the desire to develop a hotel and golf course. An agreement was struck and money placed in escrow. Alas, the seemingly fitted union did not last and the two parted without an ounce of soil being moved. As one might have guessed, the parting was less than amicable and the parties leave this Court with one basic question: Who gets the money?

## I. FACTS

The undisputed facts, as stated by the parties, follow:

1. Defendants are owners of certain real estate located on the north coast of Puerto Rico. Plaintiffs and Defendants entered into an option contract for the purchase of that land; Plaintiffs were seeking to develop land into a resort hotel and golf course.

2. The option contract ("Deed") contained provisions for three option periods. In consideration for payment of $100,000.00, in the form of a stock certificate representing securities valued at approximately $100,000.00 tendered to an escrow agent[1], Defendants extended to Plaintiffs a

---

1. Plaintiffs placed 17,388 shares of Class C common stock of the Alliance Fund, Inc. in escrow. The value of the securities varied with the market price.

ninety day Initial Option Period ("IOP") that began on June 6, 1996 and ran until September 4, 1996. The Deed provided that Plaintiffs had the right, at no additional cost, to extend the IOP for sixty additional days, until November 3, 1996.

3. Under the Deed, Plaintiffs had the right to terminate the Option if, within the IOP, they (at their own discretion) considered that they were unable to obtain the required approval for the issuance of guaranteed bonds for the financing of at least a two hundred room, five-star quality hotel with an eighteen hole golf course. In the event the Plaintiffs exercised this right, the Deed provided that the consideration Plaintiffs tendered to the escrow agent for the IOP would be returned to Plaintiffs.[2] However, the Deed also provided that the if the Plaintiffs decided not to purchase, the Deposit would be forfeited to the Defendants. Deed, Art. THIRD (i) (Dkt.32, exh. 1)

4. The Deed also provided for a Second ("SOP") and a Third Option Period ("TOP"). Plaintiffs, under the SOP provision, had the right, at any time prior to the expiration of the IOP, to extend the Option for an additional term of ninety days, beginning the day after the termination of the IOP. To exercise this right, Plaintiffs would be required to tender an additional $100,000.00 to the escrow agent.

5. The purchase price was set by the Deed at $7,500,000.00.

6. The IOP was extended for an additional 60 days under Article THIRD (b) of the Deed.[3] The main purpose of the Option was to permit Plaintiff to obtain financing for the purchase and development of the land.

7. When Plaintiffs were unable to finalize financing during the IOP (including the sixty day extension), they sought to extend the Option.

8. On November 4, 1996, Plaintiffs agreed to exercise their right to commence the SOP, and, in compliance with the Deed, to tender $100,000.00 to the escrow agent in consideration for the SOP. No money was tendered.

9. On November 6, 1996, Ricardo Hernández, agent for Defendants, signed a letter, thereby agreeing to Plaintiffs' request to extend Defendants' Option through midnight of November 20, 1996. The letter described the extension as "an extension of the Initial Option Period, as such term is defined in Article THIRD (a) of the Deed." In consideration for the extension, Plaintiffs agreed to pay Defendants, by certified or bank manager's check, "a sum equal to the fee that would otherwise have been paid to Smith Barney for the sale of limited partnership interests." The parties explained that Plaintiffs' obligation was valued at the fee Smith Barney would have charged to finance the project, but that Plaintiffs would not have to pay if the project were financed using the services of Chi Chi Rodriguez, with whom Plaintiffs

2. The Court finds it curious that neither party points to any provision within the Deed granting Plaintiffs the right to reclaim their deposit. Presumably, the parties rely on the usage of the word "deposit." The Court is not as easily convinced by mere language. But given that neither side raised this issue, the Court accepts as true Plaintiffs assertion that they had the right to reclaim their deposit.

3. The parties seem to dispute the reason for the extension. Plaintiffs claim it was to provide them more time to secure financing, while Defendants claim it was to allow them to clear up pending litigation. The parties agree that each reason was considered at some point during the process.

were negotiating, in place of Smith Barney.[4]

10. The parties agree that the extension described by the letter dated November 6, 1996 was granted by Defendants. Plaintiffs paid no money in consideration for that extension. The Extension agreement did not replace or extinguish the Deed, or replace, extinguish, or modify any other options periods provided therein.

11. On November 20, 1998, Plaintiffs notified Defendants that Plaintiffs were exercising their right to terminate the Option during the IOP under the Deed and seeking the return of the escrowed securities.

12. On December 11, 1996, Defendants informed Plaintiffs that they disagreed with Plaintiffs' interpretations of the Deed and Letter of Intent.[5] Defendants also accused Plaintiffs of "bad faith" and asked for the payment of $100,000.00 for the first option fee, and $1,050,-000.00 for the November 6th agreement.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, the trial court must go beyond the façade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). *See also Mullin v. Raytheon Co.,* 164 F.3d 696, 698 (1st Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 44, 145 L.Ed.2d 40, 1999 WL 296774 (Oct. 4, 1999); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In order to prevail on a motion for summary judgment, the moving party first must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. *See Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). Once the moving party has properly supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that a trialworthy issue remains." *Id.See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.,* 96 F.3d 10, 14 (1st Cir.1996).

### A. Plaintiffs' Motion for Summary Judgment

Plaintiffs move the Court to grant them Summary Judgment or Partial Summary Judgment pursuant to Fed.R.Civ.P. 56(a), (b), and (d) and Local Rule 311.12. Plaintiffs essentially argue that the November

---

4. This fee has been described to be between $600,000.00 and $1,050,000.00. Both parties understood that Smith Barney would not collect any money unless Smith Barney closed the sale of the limited partnership interests.

5. The parties signed the Letter of Intent prior to the Deed. The Letter of Intent set forth the parties intent to enter into an agreement.

6th Letter modified the Deed, extending the IOP until November 20, 1996. Therefore, Plaintiffs argue, they are entitled to their $100,000.00 deposit since they timely exercised their right to terminate the agreement.

More specifically, Plaintiffs request Summary Judgment on four issues: (1) The November 6th Letter extended the IOP, or alternatively, that Defendants orally agreed to such; (2) the November 6th Letter was not a novation; (3) the November 6th Letter was supported by consideration; and (4) Plaintiff's promise to pay Defendants the "Smith Barney fee" was contingent on the closing of the transaction.

Plaintiffs' Summary Judgment Motion # 1. The November 6th Letter is clear on its face; it extends the IOP until November 20, 1996. *See Berklee College of Music v. Berklee Chapter of the Mass. Fed. of Teachers, Local 4412, AFT, AFL–CIO*, 858 F.2d 31, 38 (1st Cir.1988) (When a contract is "clear on its face," there is no need to resort to extrinsic evidence). *See also Shelley, et al. v. Trafalgar House Public, Ltd.*, 973 F.Supp. 84, 87–88 (D.P.R.1997). However, Plaintiffs request for Summary Judgment on Issue # 1 is DENIED to the extent that the November 6th Letter extended the IOP. While the parties did intend to extend the IOP through the November 6th Letter, they failed to do so (see discussion below). Plaintiffs' Motion for Summary Judgment as to oral agreement is also moot, as the deadline for accepting the SOP came and went without Plaintiffs making the requisite payment.[6]

 Plaintiffs' Summary Judgment Issue # 2. Defendants make the argument that the November 6th Letter is a novation. Yet, Defendants maintain that their rights to the initial $100,000.00 deposit were neither extinguished or substituted. The argument defies logic. "Novation" is the substitution of a new contract, debt, or obligation for an existing one, between the same or different parties. *See* 6th Black's Law Dictionary 1064; Restatement (2d) of Contracts, § 280. Puerto Rico's Civil Code defines "novation" similarly, *see* P.R. Laws Ann. tit. 31, § 3241, et seq, and establishes stringent requirements for novation. *See Federal Deposit Ins. Corp. v. P.L.M. Int'l, Inc.*, 834 F.2d 248, 251 (1st Cir.1987); *Ceramic Enterprises, Inc. v. Dexion, Inc.*, 994 F.Supp. 97, 103 (D.P.R.1998). "In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points." P.R. Laws Ann. tit. 31, § 3242. "Novation is never presumed, but is always a question of intention and the intention to extinguish the old obligation and to substitute it with the new must be expressly declared." *King Seeley Thermos Co. v. Ernesto F. Rodriquez Inc.*, 385 F.Supp. 894, 896 (D.P.R.1974).

Defendants cannot argue, on the one hand, that they are entitled to a new obligation (the $1, 050,000.00 payment), while at the same time maintaining they have a claim to the $100,000.00 initial deposit funds. Defendants must chose their argument and live with the result. Furthermore, the record is devoid of any evidence which could lead to the conclusion that the parties intended the November 6th Letter to extinguish any obligation. On the contrary, as the Court has previously held, the November 6th Letter is clear on its face. Therefore, the Court GRANTS Plaintiffs' Motion for Summary Judgment on Issue # 2.

Plaintiffs' Summary Judgment Issue # 3. Plaintiffs contend that the November 6th Letter was supported by consideration. Defendants disagree and base their defense on two arguments: that there was no meeting of the minds as to the consideration and that the consideration was not substantial because Plaintiffs controlled

6. Even if Defendants agreed to extend the IOP orally, the evidence makes clear that the extension was only good through November 6, 1996. (Dkt. 31, exhs. A & B)

the contingency it was based upon, i.e. it was an illusory promise.[7]

■ It is undisputed that Defendants and Plaintiffs negotiated November 6, 1996 for an extension of the IOP. It is also clear that Defendants requested consideration for the extension. *See* Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried (Dkt.32) & Plaintiffs' Response and Objections to Defendants' Statement (Dkt.41) Consideration has been described as "any benefit derived or agreed to be conferred on one party, to which previously the beneficiary was not entitled; or on the other hand any prejudice suffered or conceded by one party to the contract other than such as he was previously bound to suffer; the same acting as an inducement on the one side or the other for the formation of the contract." *Guerra v. El Tesorero De Puerto Rico,* 8 D.P.R. 292, 326 (1905). Consideration is the essential reason motivating a party to undertake an obligation. *See Consolidated Mortgage & Finance Corp. v. Cooley,* 103 D.P.R. 6 (1974). "A contract without consideration is wholly void and nonexistent and has no effect whatsoever. Article 1227, Civil Code, 1930 edition, 31 L.P.R.A. Sec. 3432, *Hull–Dobbs Co. v. [Tribunal] Superior Court [y Vega],* 81 P.R.R. 214 [221](1959); Soto v. Feliciano [y Bithorn], 80 [D.]P.R.R. 595 [615] (1958); *Monserrate v. Lopes,* 80 [D.]P.R.R. 476 [491] (1958); *Guzman v. Guzman [y Rodriguez],* 78 [D.]P.R.R. 673 [640](1955)." *In re Las Colinas, Inc.,* 294 F.Supp. 582, 596 (D.P.R.1968), *rev'd and remanded,* 426 F.2d 1005 (1970), *aff'd,* 453 F.2d 911 (1971), *cert. denied, Banco Popular De Puerto Rico v. Las Colinas, Inc.,* 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972). *See also Rodríguez v. López Jiménez,* 116 D.P.R. 172 (1985).

■ The parties agreed to extend the IOP. Nevertheless, Defendants contend that there was no meeting of the minds as to the consideration of the November 6th Letter. Defendants allege that Plaintiffs were to pay the consideration up-front. Plaintiffs claim that payment was conditioned on the closing of the transaction. There exists no genuine issue of material fact for either way, the November 6th Letter lacked consideration. If the consideration was due up-front, as Defendants assert, it follows that the November 6th Letter is void for lack of consideration for Plaintiffs never paid the consideration. *See Febres v. Febres,* 33 D.P.R. 971 (1925). Likewise, if the consideration was conditioned on some future event which the Plaintiffs controlled, then the November 6th Letter is also null for lack of consideration.

■ Defendants also contend that Plaintiffs' purported consideration was illusory. "It is settled law that, when the promised act is conditional on the occurrence of a future event within the control of the promisor, the promise is illusory." *Crellin Technologies, Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 8 (1st Cir.1994). *See also McGrath v. Rhode Island Retirement Bd.,* 88 F.3d 12, 17–18 (1st Cir.1996); *Sam's Style Shop v. Cosmos Broadcasting Corp.,* 694 F.2d 998, 1001 (5th Cir.1982). When the promise " 'appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, "I will if I want to" '—then that promise may be characterized as an 'illusory' promise, i.e., 'a promise in form but not in substance.' FARNSWORTH, CONTRACTS § 2.13, at 75–76 (1990). An illusory promise does not constitute consideration for the other promise, and thus the contract is unenforceable against either party. *See id.;* WILLISTON ON CONTRACTS § 7:7 at 88–89." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1311 (11th Cir.1998).

---

7. Defendants also allege that Plaintiffs' concocted a scheme whereby they would not have to forfeit their deposit. But Defendants' "version of the facts does not support a reasonable inference that [Plaintiffs] entered into the ... agreement with the then present intention not to perform." *Desfosses v. Wallace Energy Inc.,* 836 F.2d 22, 31 (1st Cir.1987).

■ "The important question [then]... is whether [Plaintiffs'] right of cancellation rendered all its other promises in the agreement illusory so that there was a complete failure of consideration." *Laclede Gas, Co. v. Amoco Oil Co.*, 522 F.2d 33, 36–37 (8th Cir.1975). However, if the "condition imposes upon the [promisor] the duty of making a sincere effort to fulfill the obligation, then the fact that the [promisor] is in a position to hinder or prevent the execution of the contract does not make it null." *Sam's Style Shop v. Cosmos Broadcasting Corp.*, 694 F.2d 998, 1001 (5th Cir.1982).

■ Generally, courts do not favor arbitrary cancellation clauses.

"[T]he tendency is to interpret even a slight restriction on the exercise of the right of cancellation as will satisfy the requirement of sufficient consideration; for example, where the reservation of right to cancel is for cause, or by written notice, or after a definite period of notice, or upon the occurrence of some extrinsic event, or is based on some other *objective* standard."

*Laclede Gas Co.*, 522 F.2d at 37 (quoting Williston § 105, at 418–19) (emphasis added). Plaintiffs had the right to cancel at any time within the IOP if *they,* at their sole discretion, considered that they were unable to obtain the required approval for the issuance of guaranteed bonds for the financing of the hotel and golf course. Plaintiffs' rights were subjective in nature. Plaintiffs were not required to give any prior notice, nor was the termination reliant on an extrinsic event out of the Plaintiffs' control.[8] Plaintiffs cannot hide behind conditions which they controlled. "There is a difference ... between conditions that turn on the performance of the

[promisor], or on the state of the economy, and conditions that depend on the sole discretion of the employer. In the latter case, the condition renders the initial promise of 'permanence' wholly illusory." *Belknap, Inc. v. Hale, et al.*, 463 U.S. 491, 540 fn. 13, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983). For the foregoing reasons, the Court holds that Plaintiffs' promise was illusory and the November 6th Letter fails for lack of consideration.

Plaintiffs' Summary Judgment Issue # 3 is therefore DENIED, as the November 6th Letter did not contain consideration.

Plaintiffs' Summary Judgment Issue # 4. Plaintiffs' contend that their promise to pay Defendants the "Smith Barney fee" was contingent on the closing of the transaction. To the extent such a ruling is necessary, Plaintiffs' motion for summary judgment on Issue # 4 is GRANTED.[9]

**B. Defendants' Motion for Summary Judgment**

Defendants also move for Summary Judgment. (Dkt.32) Defendants seemingly base their motion on several issues: (1) the November 6th Letter lacked consideration; and (2) if the November 6th Letter contained consideration, then Plaintiffs breached the agreement.[10] (Dkt.32) The Court has already ruled on Defendants' first issue, thereby rendering Defendants' second issue moot.

For the reasons stated previously, Defendants' Motion for Summary Judgment is GRANTED as to the November 6th Letter's lack of consideration. Defendants' Counterclaim is hereby DISMISSED for the same reasons as to the Court's finding of a lack of consideration for the November 6th Letter. Defendants

---

**8.** Plaintiffs were required to state the subjective belief that they were unable to secure a guarantee in order to terminate the Option. This is not enough to transform an illusory promise into licit consideration.

**9.** Plaintiffs' assertion on this issue also provides further support for the Court's previous

determination: the November 6th Letter lacked consideration.

**10.** Defendants have alleged bad faith on the part of Plaintiffs, though no evidence was presented aside from Defendants bald allegations.

second issue, that Plaintiffs breached the November 6th Agreement is thereby DENIED to the extent it is not moot.

## III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment, as to Issues #1 and #3 is DENIED. Plaintiffs' Motion for Summary Judgment, with respect to Issues #2 and #4, is GRANTED. Defendants Motion for Summary Judgment is GRANTED as to Issue #1. Defendants Motion for Summary Judgment as to Issue #2 is DENIED.

Wherefore, Defendants' Counterclaim for $1,050,000.00 is hereby DISMISSED WITH PREJUDICE. Plaintiffs' claim for the escrowed securities is also DISMISSED WITH PREJUDICE. Defendants claim for the escrowed securities is GRANTED.

As the Initial Option Period ended without either extension or termination by Plaintiffs, the Court directs the escrow agent to turn over the funds to Defendants.

**IT IS SO ORDERED.**