CINTRÓN, DEMANDANTE Y APELADO, *v.* FERNÁNDEZ, DEMANDADO
Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao
en causa sobre cobro de. dinero.

No. 1255.—Resuelto en mayo 19, 1915.

PRÉSTAMO—PRUEBA ESCRITA DEL CONTRATO—CUANTÍA DEL PRÉSTAMO—PRÉSTAMO
MENOR DE $300.—De acuerdo con los artículos 1245 y 1247 del Código Civil,
en armonía con lo que previenen los 1221 y 1225, aun cuando la cuantía de
un préstamo exceda de $300 no es necesaria evidencia por escrito para la
validez y prueba del contrato.

CONTRATOS—EFICACIA DE LOS MISMOS—REGLA CONTENIDA EN EL ARTÍCULO 1246
DEL CÓDIGO CIVIL.—De la validez,. a virtud de la· concurrencia de las condi-
ciones esenciales y no de las formas extrínsecas requeridas por la ley para
otros distintos efectos, depende exclusivamente la eficacia de los contratos
entre las partes contratantes, las cuales, por tanto, pueden recíprocamente
exigirse el cumplimiento de las obligaciones pactadas. Esta regla de derecho
está sostenida por el artículo 1246 del Código Civil revisado.

PRÉSTAMO—PERFECCIONAMIENTO DE ESTE CONTRATO.—El contrato de préstamo
tiene existencia y se perfecciona desde que ambas partes consienten en el
mismo, y por tanto, desde que una recibe de la otra el dinero que le fué
prestado queda obligada a su devolución en* el tiempo convenido.

CONTRATO—DIFERENCIA ENTRE LA NECESIDAD DE LA ESCRITURA PÚBLICA Y DEL
DOCUMENTO PRIVADO—CONTRATO ORAL.—Existe una diferencia evidente entre
la necesidad de la escritura pública y del documento privado y es que mien-
tras aquélla puede ser necesaria aun después de reconocido el contrato ver-
bal por una sentencia, el segundo, después de ésta, que supone mayor auten-
ticidad y efectos legales, no tiene apenas objeto.

COMERCIANTES—DEPENDIENTE DE COMERCIO—EJERCICIO HABITUAL DEL COMERCIO.—
Cuando el demandante no afirma en su demanda que el demandado sea comer-
ciante ni tampoco éste lo alega en su contestación, aun cuando de la prueba
se estime justificado que el demandado era un dependiente. de comercio,
esto no entraña el concepto de ejercicio habitual del comercio, según el artículo
1°. del Código de Comércio.

PRÉSTAMO MERCANTIL—ACTOS DE COMERCIO—PRÉSTAMO PARA DEDICARLO AL CO-
MERCIO.—Cuando no consta que la suma prestada fuera destinada a actos
de comercio, aun cuando fuera pedida, para establecerse en .el comercio, si
no hay prueba de que se le diera tal inversión, no puede sostenerse ·que se
trate de un préstamo mercantil, de acuerdo con el .artículo 311 del Código de
Comercio.

TESTIGOS—PREGUNTAS YA CONTESTADAS—ELIMINACIÓN—ABUSO DE DISCRECIÓN.—
No comete abuso de discreción una corte al negar que se pregunte a un
demandante, declarando como testigo, si era cierto que el negocio que motivó
la reclamación lo había hecho con otro individuo que era socio del deman-
dado, cuando ya el demandante había declarado categóricamente haber· hecho
la negociación con el demandado. Además, en este caso ·si se quería probar

que el demandante había hecho la negociación con otro individuo que era socio del demandado, pudo traerse ese testigo al juicio para contradecir el testimonio del demandante y librarse de responsabilidad con éste.

Id.—PREGUNTAS NO INFLUYENTES.—En este caso se hizo a un testigo la siguiente pregunta: "¿Vd. sabe de qué eran esos $162?" Se resolvió en apelación que la corte no cometió error al desestimarla, porque el testigo no era el llamado a declarar sobre la procedencia del dinero, sino el mismo demandante, quien ya había explicado dicha procedencia y porque la contestación que hubiera dado el testigo no era de influencia en el resultado del pleito.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. *Francisco González.*

Abogado del apelado: Sr. *Carlos Travecier.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Se trata de recurso de apelación interpuesto por José Fernández conocido por Fernández Martínez, demandado, contra sentencia que en grado de apelación y mediante celebración de nuevo juicio dictó la Corte de Distrito de Humacao en 29 de mayo de 1914 condenándole a satisfacer a Emiliano Cintrón, demandante, la suma de $366 con las costas de la acción.

Alégase en la demanda, su fecha 1°. de noviembre de 1913, que con fecha 2 de agosto del mismo año el demandante facilitó en calidad de préstamo al demandado la suma de $362 a devolver en 30 de octubre también de 1913, y que habiendo vencido la deuda el demandante requirió de pago al demandado quien se negó a efectuarlo, estando por tanto insoluta aquella.

El demandado negó todos y cada uno de los hechos consignados en la demanda, y celebrado el juicio y practicada la prueba del demandante, el demandado presentó una moción de *non suit* que fué desestimada en cuyo estado el demandado, deseando sostener en apelación ante esta Corte Suprema la insuficiencia de la evidencia, según así lo manifestó, se abstuvo de presentar pruebas a fin de que la corte dictara sentencia como así lo hizo pronunciando la apelada de que se deja hecho mérito.

Alega la representación de la parte apelante como motivos del recurso los siguientes:

*Primero.* Que la corte cometió error al declarar sin lugar la moción de sobreseimiento que al terminarse la prueba del demandante presentó el demandado fundado en la insuficiencia de dicha prueba, citando como infringidos el artículo 1247 del Código Civil tal como fué enmendado por Ley de 7 de marzo de 1912, en relación con el artículo 162 de la Ley de Evidencia. *Segundo.* Que la corte infringió el artículo 51 del Código de Comercio al dar como probado el préstamo de que se trata mediante las declaraciones de testigos. *Tercero.* Que la corte cometió error al no permitir que se hiciera al testigo Emiliano Cintrón la siguiente pregunta: ¿No es cierto que Ud. hizo ese negocio con otro señor que era socio de Benítez? *Cuarto.* Que la corte cometió error al no permitir que se hiciera al testigo Luis Toro Pérez la siguiente pregunta: ¿Ud. sabe de qué eran esos 162 pesos?

Examinemos esos errores por el mismo orden en que han sido expuestos.

*Primer error.*—El artículo 1247 del Código Civil, después de establecer que ciertos actos y contratos que enumera deberán constar en documento público, estatuye que también deberán hacerse constar por escrito, aunque sea privado, los demás contratos en que la cuantía de las prestaciones de uno o de los dos contratantes exceda de $300.

La enmienda hecha a dicho artículo por la Ley No. 65 de marzo 7, 1912, no altera el precepto transcrito, pues esa enmienda se refiere a los contratos otorgados con intervención de mandatario. No cabe interpretar el artículo 1247 en el sentido de que no habiéndose hecho constar por escrito, no obstante su cuantía, el préstamo de que se trata, no es posible admitir se pruebe por medio de evidencia testifical.

Ciertamente que en el presente caso no se hizo constar por escrito el préstamo, pero no por ello hemos de llegar a la conclusión a que llega la parte apelante, pues la prueba testifical fué admitida sin objeción alguna, y ni en el Código

Civil ni en la Ley de Evidencia encontramos precepto alguno que haga necesaria la evidencia por escrito para la validez y prueba del contrato de préstamo.

Los artículos 103 y 104 de la Ley de Evidencia no son aplicables al presente caso por cuanto el artículo 1247 del Código Civil debe interpretarse en armonía con lo que previenen los 1221 y 1225. Según el artículo 1221 el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio y según el artículo 1225 los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.

El contrato de préstamo entre demandante y demandado tuvo existencia y se perfeccionó desde que ambas partes consintieron en el mismo, y por tanto desde que el demandado recibió del demandante el dinero que le fué prestado, quedó obligado a su devolución en el tiempo convenido.

Y no es necesario que para la exigencia de tal obligación sea indispensable prueba escrita, pues según el artículo 1245 "los contratos serán obligatorios cualquiera que sea la forma en que se hayan celebrado siempre que en ellos concurran las condiciones esenciales para su validez," estableciendo el artículo siguiente o sea el 1246 que si la ley exigiere el otorgamiento de escritura u otra forma especial para hacer efectivas las obligaciones propias de un contrato, los contratantes podrán compelerse recíprocamente a llenar aquella forma desde que hubiese intervenido el consentimiento y demás requisitos necesarios para su validez.

Es de notar que esos artículos 1245 y 1246, y el 1247, integran el Capítulo III del Título II del Libro IV del Código Civil, cuyo capítulo lleva por epígrafe "De la eficacia de los contratos."

"De la validez, a virtud de la concurrencia de las condiciones esenciales," dice el Tribunal Supremo de España en

sentencia de 4 de julio de 1899, "y no de las formas extrin-
secas requeridas por la ley para otros distintos efectos, de-
pende exclusivamente la eficacia de los contratos entre las
partes contratantes, las cuales, por tanto, pueden recíproca-
mente exigirse el cumplimiento de las obligaciones pactadas.
El artículo 1279 del propio Código (1246 del Código Civil
Revisado) confirma esa regla de derecho; porque previendo
el caso de que la ley exigiera el otorgamiento de escritura
u otra forma especial para que las obligaciones contraídas
puedan hacerse efectivas en todo caso por aquel a cuyo favor
se hubieren establecido, no subordina la eficacia del contrato
a la concurrencia de esa forma extrínseca; y parte, por el
contrario, de su validez para declarar que en tal caso los
contrayentes, aparte de las obligaciones pactadas, se hallan
obligados a llenar esa forma o solemnidad externa, lo cual
no permite sostener que sea lícito al obligado contrariar con
sus actos las obligaciones contraídas, ni siquiera que el ejer-
cicio de la acción para llenar las formas haya de preceder
al de la derivada del contrato."

El mismo tribunal en sentencia de 19 de octubre de 1901,
sostiene la doctrina establecida en la de 4 de julio de 1899,
expresándose en los siguientes términos:

"El artículo 1280 (1247 del Código Civil Revisado), se limita
a enumerar los actos y contratos que deben hacerse constar en docu-
mento público o privado, y el 1279 (1246 del Código Civil Revisado),
lejos de subordinar la eficacia del contrato para las partes contra-
tantes a la concurrencia de forma alguna extrínseca determinada,
le reconoce plena eficacia en el mero hecho de otorgar a los mismos
contrayentes acción adecuada para compelerse al otorgamiento de
escritura u otra forma especial, cuando tales formas sean precisas
para que el contrato produzca la plenitud de los efectos que, dado
su objeto, esté llamado a producir, lo cual, en sustancia, equivale
a establecer como condición implícita de todo contrato la de llenar
esa forma, aunque a ello no se hubieren expresamente obligado los
contratantes, y no a subordinar el ejercicio de la acción principal
sobre cumplimiento de lo pactado al ejercicio de la acción secunda-
ria sobre la forma, subordinación que no tendría razón de ser, siendo,

como es uno mismo, el título generador de ambas acciones, o sea la existencia de un contrato válido, y uno mismo su objeto, o sea el cumplimiento del contrato mismo.''

Y por último, el propio tribunal en sentencia de 18 de junio de 1902 dice:

''La eficacia de los contratos no depende de sus formas extrínsecas, sino de la concurrencia de las circunstancias necesarias para su validez, siendo obligatorios, cualquiera que sea la forma de su celebración, sin que su constancia por documento público o privado que para algunos exige la ley, sea requisito esencial para su subsistencia, sino medio coercitivo concedido a los contratantes para compelerse recíprocamente a llenar aquella forma.''

Nos parece aceptable la doctrina establecida por el sabio tribunal español en las sentencias a que acabamos de hacer referencia, y ya citamos la última de 18 de junio de 1902 al resolver el caso de *Vázquez* v. *Medina,* 17 D. P. R., 105.

El empleo del medio coercitivo a que se refiere la sentencia del Tribunal Supremo de España de 18 de junio de 1902 puede ser necesario para la garantía del derecho nacido del contrato meramente verbal, como sucede por ejemplo en un contrato de compraventa de bien inmueble, que no puede ser inscrito en el registro de la propiedad sin elevarse antes a escritura pública, y cuya omisión de inscripción puede dar lugar a que el comprador pierda su derecho de propiedad en competencia con otro comprador que posteriormente haya adquirido la misma cosa por escritura pública, inscribiendo ésta en el registro. También el empleo de ese medio coercitivo puede ser conveniente para hacer constar por escrito, aunque sea privado, un contrato cuyo cumplimiento no pueda exigirse desde luego y cuya prueba por medio de testigos pueda hacerse difícil si no imposible en lejano tiempo. Pero no cabe sostener que el ejercicio de la acción para llenar las formas haya de preceder al de la derivada del contrato.

Aun más, opinamos con el ilustrado comentarista Sr. Manresa que hay una diferencia evidente entre la necesidad de la escritura pública y del documento privado, y es que mien-

tras aquélla puede ser necesaria aun después de reconocido el contrato verbal por una sentencia, el segundo, después de ésta, que supone mayor autenticidad y efectos legales, no tiene apenas objeto.

En el presente caso se ha comprobado suficientemente por medio de testigos la existencia del contrato de préstamo. No cabe negar su eficacia por no haberse hecho constar en escrito, aunque éste fuera privado, y hoy carecería de objeto la acción para que se llevara a cabo esa formalidad externa, aparte de que la sentencia que así lo ordenara reconocería *ipso facto* la existencia del contrato y tendría más fuerza legal para demostrar esa existencia que el mismo documento escrito que en cumplimiento de ella se extendiera por el deudor reconociendo la obligación.

La corte no cometió error al declarar sin lugar la moción de sobreseimiento.

*Segundo error.*—Tampoco infringió la corte el artículo 51 del Código de Comercio.

Dicho artículo previene que la declaración de testigos no será por sí sola bastante para probar la existencia de un contrato, cuya cuantía exceda de 1,500 pesetas, a no concurrir con alguna otra prueba.

En el presente caso se trata de un contrato de préstamo y el préstamo según el artículo 311 del código citado se reputará mercantil cuando concurran las circunstancias siguientes: 1ª. Si alguno de los contratantes fuere comerciante. 2ª. Si las cosas prestadas se destinaren a actos de comercio.

No aparece que ninguna de esas circunstancias concurra en el préstamo de que se trata. El demandante no afirma en su demanda que el demandado sea comerciante. Tampoco éste lo alega en su contestación, y aunque el mismo demandante Emiliano Cintrón declara que Fernández era un dependiente de comercio, y el testigo Luis Toro Pérez, que ha visto empleado a Fernández en la casa de Méndez, esos testimonios podrían ser bastantes para estimar justificado su carácter de dependiente de una casa de comercio, pero

no el de comerciante que entraña el concepto de ejercicio habitual del comercio según el artículo 1º. del Código de Comercio. Tampoco consta que la suma prestada por el demandante al demandado fuera destinada a actos de comercio, pues precisamente según las pruebas, esa suma fué pedida por Fernández a Cintrón en calidad de préstamo para establecerse en el comercio y no hay prueba de que le diera tal inversión.

Como no se trata de un préstamo mercantil, no es atinente la infracción legal apuntada, y huelga discutirla.

*Tercer error.*—Resulta de la exposición del caso que después de haber declarado Emiliano Cintrón que de los $366 que prestó a José Fernández $162 le habían sido entregados por el Márshal de la Corte Municipal de Yabucoa con motivo de una reclamación hecha a Benítez y Vázquez y que el negocio del préstamo fué concertado con Fernández, se hizo a Cintrón por el abogado del demandado la siguiente pregunta: "¿No es cierto que hizo Ud. ese negocio con otro señor que era socio de Benítez?" Dicha pregunta fué declarada sin lugar, tomando excepción el demandado.

Opinamos que aunque esa pregunta pudo ser admitida, el juez no abusó de su discreción al negarla, toda vez que ya Cintrón había declarado categóricamente haber hecho el negocio con Fernández, pero de todos modos la negativa no causó perjuicio al demandado, pues si éste quería probar que Cintrón había hecho el negocio con otro señor que era socio de Benítez, pudo traer ese testigo al juicio para contradecir el testimonio de Cintrón y librarse de responsabilidad con éste.

*Cuarto error.*—También muestra la exposición del caso que al declarar el testigo Luis Toro Pérez, después de haber manifestado que el Márshal de la Corte Municipal de Yabucoa entregó a Cintrón los $162 de que se deja hecho mérito, el abogado del demandado hizo al testigo la siguiente pregunta: "¿Ud. sabe de qué eran esos 162 pesos?" El juez desestimó esta pregunta, tomando excepción el demandado.

La corte no cometió error en su resolución, pues no era Toro Pérez el llamado a declarar sobre la procedencia de ese dinero sino el mismo Cintrón quien había ya explicado dicha procedencia.    De todos modos la contestación que a dicha pregunta hubiera dado el testigo no era de influencia en el resultado del pleito.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.