Milisa LOPEZ MORALES,
et al., Plaintiffs,

v.

HOSPITAL HERMANOS MELENDEZ,
INC., et al., Defendants.

Civil No. 03–1155(SEC).

United States District Court,
D. Puerto Rico.

July 13, 2006.

Alberto J. Perez–Hernandez, David Efron Law Offices, San Juan, PR, for Plaintiffs.

Raphael Pena–Ramon, De Corral & De Mier, Michelle Pirallo–Di Cristina, Pinto–Lugo, Oliveras & Ortiz, PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Co-defendant American International Insurance Company (hereinafter "AIICO") has requested that we set aside the Judgment we entered pursuant to the parties' sealed settlement agreement (see Dockets 128, 119, 115). Co-defendant Hospital Hermanos Meléndez (hereinafter "the Hospital") has joined in said request (Docket # 129). Plaintiffs have filed an opposition (Docket # 131). For the reasons set herein, we **DENY** the hospital's and AIICO's request. Conversely, we **GRANT** Plaintiffs' request that we compel Defendants' compliance with the settlement agreement and Judgment (Docket # 137).

## FACTUAL BACKGROUND

Because this motion is before us after a lengthy negotiation process of which the Court was fully apprised, having held several settlement conferences, the Court is closely acquainted with the relevant facts and recites them accordingly.

This diversity suit was filed on February 2003. In essence, Plaintiffs sought monetary relief for the damages suffered by Jomar Antonio Matos–López shortly after birth as a result of the alleged medical malpractice of Defendants. Some two and a half years of active litigation ensued. Thereafter, on December 2005, the parties still remaining in the case—Plaintiffs, Defendants AIICO and the Hospital, and Third–Party Defendants Dr. Vera and Dr. Ortega—came before the Court for a pretrial and settlement conference (see Docket # 102). The possibility of settlement was extensively discussed at that conference and, after hearing each party's suggestion as to a settlement amount, the Court made a recommendation, both as to the sum for which the parties should settle and the form that such a settlement should take, that is, that it should be a structured settlement.[1] Approximately one month later, the Court held another settlement conference (see Docket # 105). At that time, Counsel for Defendants informed that they had secured their respective clients' approval of the settlement terms recommended by the Court. Plaintiffs, however, did not agree to settle on such terms. The Court then fashioned a new settlement recommendation, whereby the total settlement sum increased and there would be no structured settlement, although the Court forewarned Plaintiffs that it would closely monitor the settlement so as to ensure that it adequately protected minor Jomar's interests. Some two weeks later, the Court and the parties met for a third settlement conference (see Docket # 107). Once again, Defendants appeared willing to settle as recommended by the Court but Plaintiffs again rejected a settlement along the lines suggested by the Court. After some discussion, both among Counsel and the Court and telephonically between Counsel and their clients, Plaintiffs, AIICO, and the Hospital agreed to a new, higher, settlement recommendation. However, no settlement was reached at that point since Counsel for Third Party Defendants Dr. Vera and Dr. Ortega could not, on such short notice, secure the approval of her clients and the insurance company

---

1. Several concrete scenarios as to structured settlements were presented by Counsel for AIICO as part of the settlement negotiations. Under those scenarios, settlement payments were guaranteed for a set number of years. In case minor Jomar died during those years, the payments would cease once the agreed-to term (i.e., twenty years) had expired. As explained further below, however, the idea of a structured settlement was eventually abandoned.

to the increased settlement amount that would be due by them.

Those were the three settlement conferences held by the Court prior to the entry of Judgment. All were lengthy and characterized by extensive discussion of two main topics: (1) the settlement amount and how it should be distributed among the several defendants, and (2) the risks to each party of taking the case before a jury. As to the second, Defendants, some more than others, maintained that they had a solid defense pertaining to the issue of negligence, or lack thereof: that is, they maintained that there had been no medical malpractice and that minor Jomar's damages should be attributed either to other parties (for example, Counsel for Dr. Vera and Dr. Ortega argued that her clients' involvement with the minor had been minimal and that any medical malpractice had been committed by the Hospital) or to some condition that the child had and of which the defendants, through no fault of their own, were unaware. Plaintiffs responded to said arguments both by expressing confidence in their case as to liability and by emphasizing the impact that the evidence of damages would have on the jury. After all, as a result of the events which they alleged gave rise to their claim, minor Jomar had suffered permanent and incapacitating brain damage. As to the settlement amount, the discussions centered both on which defendant should pay what, given their different risks with regards to liability, and why the amount requested was so high. Plaintiffs' justification for their settlement demand was threefold: (1) the amount of money to provide adequate medical care for minor Jomar was very high, (2) the catastrophic nature of minor Jomar's injuries and the effect it had had on his life and his family's would probably move the jury to be generous, and (3) Plaintiffs had filed a parallel state court complaint, which could also render Defendant liable for damages.

After the last settlement conference, on February 21, 2006, Counsel for Co-defendants Dr. Vera and Dr. Ortega informed the Court that she had secured the necessary approval for settlement, and, consequently that settlement by all the parties had been reached (*see* Docket # 111). She also requested a ten-day period to file the settlement stipulation (*Id.*). The Court then requested that the settlement papers be filed by March 6, 2006 (Docket # 112). On that date, a stipulation for dismissal and a sealed settlement agreement was filed (Dockets # # 113–115). Per the settlement agreement, the same was subject to judicial approval (see Docket # 115, ¶ 17 and ¶¶ 9 and 2d).

The settlement agreement had been signed by some of the attorneys on March 3, 2006. However, Counsel for AIICO and Counsel for the Hospital in excess of its insurance coverage were unable to sign on that date and consequently signed on Monday, March 6, 2006. Unbeknownst to them, during the week-end, minor Jomar passed away due to an acute respiratory failure. Indeed, Plaintiffs' attorneys themselves stated that they remained ignorant of minor Jomar's death until after almost all of the attorneys had signed the agreement; the lone exception being Counsel for the Hospital in excess of its insurance coverage, who signed in the afternoon, after notice of Jomar's death had reached his attorneys.

Upon receipt and examination of the sealed settlement agreement, the Court issued an order to Plaintiffs advising them that it would be unable to approve of the settlement and enter judgment until after Plaintiffs had complied with the obligations imposed by Local Rule 41(b) in order to safeguard a minor's interests whenever a minor's claims are settled (see Docket

# 116). Plaintiffs' compliance with that order came in an unexpected form: instead of filing the Local R. 41(b) motion, Counsel for Plaintiffs informed that on the afternoon of March 6, 2006, they had been informed that minor Jomar had "suddenly gone into cardiac arrest" and passed away[2] and consequently, there being no other minors in the action, the Court could enter Judgment (see Docket # 118). Counsel added that once Judgment was entered, the settlement amount could be deposited with the Clerk of the Court until probate proceeding took place in Florida (Id).

Four days later, the Court entered Judgment dismissing the case with prejudice pursuant to the parties' settlement agreement and ordering that the settlement funds be deposited with the Clerk of the Court. Shortly before entering Judgment, however, the undersigned's Chambers received a phone call from Counsel for AIICO informing, in essence, that upon learning that the minor had died prior to her signing the settlement agreement, her client had qualms about the same and would be filing a motion to that effect. The undersigned's clerk informed her that Judgment was already prepared and signed and would be entered forthwith, but that she should feel free to file any motion she required and the Court would entertain it. Judgment was entered and electronically filed in the Court's docket and, some twenty minutes later, AIICO filed a motion informing that it was officially withdrawing its acceptance of the settlement agreement and requesting a hearing (see Docket # 120). The hospital later filed a motion adopting by reference AIICO's motion (see Docket # 121).

The Court then held an in-chambers conference to discuss AIICO's and the hospital's post-Judgment motion and the impact of minor Jomar's death on the settlement agreement and subsequent Judgment. After some discussion, the Court ordered the parties to file briefs regarding the validity of the settlement agreement and clarified that said briefs were not to be used as a substitute to post-judgment motions. The parties duly complied and filed their briefs, which we have considered in issuing this ruling.

## Standard of Review

Fed.R.Civ.P. 59(e) allows a party, within ten (10) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. *Venegas–Hernandez v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir.2004) (citations omitted). In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision. *Id.* (citing *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir.1993)). Despite the lack of specific guidance by the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present newly discovered evidence." *F.D.I.C. v. World University, Inc.,* 978 F.2d 10, 16 (1st Cir.1992) (citing *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). Rule 59(e) may not, however, be used to raise arguments that could, and should, have been presented before judgment was entered, nor to advance new legal theories. *Bogosian v. Woloohojian Realty Corp.,* 323 F.3d 55, 72 (1st Cir.2003).

Fed.R.Civ.P. 60(b), on the other hand, permits the Court, on motion by a party, to relieve said party from a final judgment

---

2. Five year old Jomar Antonio passed away on **March 4, 2006.**

for the reasons enumerated therein. In this case, Co-defendants have not specified which particular subsection of Rule 60 they are invoking. Under any of the subsections, Rule 60(b) relief can be characterized as extraordinary, such that "a motion thereunder may be granted only under exceptional circumstances." *Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19, 27 (1st Cir.2006) quoting *Lepore v. Vidockler,* 792 F.2d 272, 274 (1st Cir.1986). Because Co-defendants do not, in their arguments, address any of the reasons set forth in the first five sub-sections of Rule 60(b), we take their motion as filed under the residual, catchall sub-section(6) of that rule, "which allows a court to relieve a party from a final judgment where such relief is appropriate to accomplish justice, but the reasons for that relief are not encompassed by other provisions of the rule." *Paul Revere Variable Annuity Ins. Co. v. Zang,* 248 F.3d 1, 5 (1st Cir.2001).

### Applicable Law and Analysis

█ As outlined above, the Court entered Judgment pursuant to a settlement agreement by the parties. Co-defendants AIICO and the hospital posit that we should set aside that judgment because the settlement agreement which prompted our judgment should be held null. In turn, they support their argument regarding nullity by asserting that, at the time they signed the settlement papers, minor Jomar was dead and they did not know so, thus rendering their consent at the time of that signature void because of error. Plaintiffs counter that, prior to the time when counsel signed the settlement papers, the parties already had a binding and valid agreement.

█ We first address some fundamental Puerto Rico contract-law points. In the end, resolution of this issue will turn on these notions. A compromise or settlement agreement is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted. 31 P.R. Laws Ann. § 4821. These contracts are characterized by the following three essential elements: (1) that the parties believe, whether rightly or not, that they are immersed in an uncertain legal relationship; (2) the parties wish to eliminate the uncertain legal relationship by substituting it with one that they deem certain and incontrovertible; and (3) reciprocal concessions must be made. *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503, 512–513, 21 P.R. Offic. Trans. 496, 506 (citing XXII–2 M. Albaladejo, Comentarios al Código Civil y compilaciones forales 17, Madrid, Ed. Rev. Der. Privado (1979)). It bears mentioning that although the concessions must be reciprocal, that does not mean that they must also be equivalent. *Id.*

█ Settlements are subject to the general rules regarding contracts and their interpretation, insofar as compatible with the specific provisions of the Civil Code that regulate compromises. *See, Ex Parte Negron–Rivera,* 120 D.P.R. 61, 74–75 (1987), 20 P.R. Offic. Trans. 63, 77, *Ramos Rivera v. ELA,* 148 D.P.R. 118, 128 (1999) (unpublished) (citations omitted). Thus, as with all contracts, in order for there to be a valid settlement agreement there must be: (1)consent of the parties to the contract; (2) a definite object as the subject of the contract; and (3) a cause for the obligation. *See,* 31 P.R. Laws Ann. § 3391, *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 D.P.R. 860, 871 (1995), 1995 WL 905586 (English translation) (explaining that in the case of compromises the object is the controversy-judicial or extrajudicial-dividing the parties and the cause is the termination of that controversy through mutual concessions). A party's consent, however, may be marred by error, vio-

lence, intimidation, or deceit. 31 P.R. Laws Ann. § 3404. Consent given as a result of any such defect may render such a consent null. *Id. See also,* 31 P.R. Laws Ann. § 4828 (making that result expressly applicable to settlement agreements in which error, deceit, violence, or falsity of documents are involved).

█ The preceding paragraph explains what is necessary for any contract to be valid. As for when such a contract comes to life, the Civil Code tells us that a contract exists from the moment one or several parties consent to giving something, rendering some service, or binding themselves with regards to another person or persons. 31 P.R. Laws Ann § 3371. Furthermore, a contract is deemed perfected as soon as the parties give their consent; from that time on the parties are bound to fulfill their obligations under the contract. P.R. Laws Ann. § 3375. The manner in which the parties impart their consent, whether it be in writing or verbally, is generally of no consequence. Under Puerto Rico law, verbal contracts are valid and enforceable. *See,* 31 P.R. Laws Ann. § 3451, *Cintron v. Fernandez,* 22 D.P.R. 483 (1915), *Abarca v. Cordero,* 60 D.P.R. 519 (1942). *But see,* 31 P.R. Laws Ann. § 3453 (enumerating certain types of contracts which have additional requisites regarding form).

The application of the preceding legal framework to the facts of this case leads us to the inexorable conclusion that we are faced with a valid, binding settlement agreement. Because as a result thereof Plaintiffs agreed to the voluntary dismissal of their complaint, we find that our Judgment was proper and should not be disturbed. We explain.

On January 31, 2006, and after extensive negotiations, three out of five parties stated that they would be agreeable to settling the case (*see,* Docket # 107). Those three parties—Plaintiffs, AIICO, and the Hospital—were in agreement as to: (1) the total sum which should be paid in settlement, (2) the manner in which it should be apportioned among the several defendants, and (3) that in consideration for said sum, Plaintiffs would voluntarily dismiss this civil action as well as the one filed in state court. By February 21, 2006, the two remaining parties, the individual doctors, agreed to what was required of them in order for settlement to be reached (*see,* Docket # 111).

When the two doctors agreed to the final settlement proposal, consent by all of the parties was complete. At that point, then, every party to the settlement agreement had imparted its consent thereto ("meeting of the minds") and, consequently, a contract came into existence. That such a contract was verbal does not render it in any way invalid. As stated above, Puerto Rico law allows for verbal contracts. Furthermore, that the parties requested some time to put the agreement in writing is of no consequence. The fact that after the parties had a contract they took a while longer in drafting the written counterpart does not push back the date in which the contract was reached. The contract existed ever since the parties gave their consent to the terms of the agreement.

Indeed, by February 21, 2006, the parties had reached a settlement agreement. It was on that date that Counsel for the two doctors informed that she had secured approval of the settlement proposal and, consequently, settlement by all the parties had been reached. We note that although that motion was filed solely by Counsel for the two doctors, there is no suggestion, either on that motion or on the motions now before us, that the other parties had retreated from the settlement proposal, or that the terms of the settlement changed

from the time the Hospital, AIICO, and Plaintiffs came to an agreement (January 31, 2006, *see* Docket # 107) to the time the two doctors came on board. More to the point, there is also no argument that after Counsel for the two doctors informed that a settlement agreement had been reached, the parties continued discussing the issue and the terms of the contract somehow changed. If that had been the case, then, arguably, the written settlement agreement would be more than the mere written proof of a contract already reached by the parties and, thus, the date of the parties' signature could have been relevant.

We need not dwell on hypothetical scenarios: as the case stands, there appears to be no doubt that the parties reached a final, albeit verbal, settlement agreement by February 21, 2006. At that time minor Jomar was still alive. Consequently, Defendants' consent to the settlement agreement, at the time it was given (i.e., on or before February 21, 2006) could not have been vitiated by their ignorance of minor Jomar's death. That Jomar died some time after, two days before some of the Defendants had signed the written counterpart of the settlement agreement, does not retroactively render Defendants' consent null. By the time of Jomar's death, the settlement agreement had been reached and the parties were already bound by it.

We note, moreover, that the subsequent death of minor Jomar does not render the contract defective. The consent must be judged at the time it was given, that is, at the time the agreement was reached. Therefore, Jomar's later death had no effect over it. Nor does the passing of minor Jomar deprive this settlement agreement of object or cause. Even after Jomar's passing, Plaintiffs, among them Jomar's heirs, would still have actionable claims against Defendants. Thus, there would still be a legal controversy dividing the parties, and the termination thereof would still constitute cause for a settlement agreement.

While we are fully cognizant that the final settlement sum took into account that the medical care for Jomar would be very costly, the fact that the need for such medical care disappeared shortly after the parties had entered into a settlement agreement does not, under the terms of this settlement agreement, require an adjustment of the settlement amount. The settlement agreement includes no condition nor specific provision applicable in case Jomar died before a particular number of years had passed. The parties could have included such a condition; indeed, the Court recalls that at one point Plaintiffs objected to a structured settlement because it would entail a lesser total settlement amount if the child died prior to a certain age. Thereafter there was no more discussion regarding structured settlements or reduced payments in case of Jomar's early death. Although Defendants may have considered the possibility of including some measure of relief from the considerable settlement sum in case Jomar's death at an early age put an end to the need for his costly medical treatments, the negotiations took a different turn and Defendants, in pursuing their rightful interest in putting an end to the case, followed that path.

Because the parties reached a binding settlement agreement whereby they agreed to put an end to this civil case, we find no error in our Judgment dismissing the same. Similarly, we find that we are not before the exceptional circumstances that warrant relief from Judgment. Although the timing of Jomar's death, just days after the parties had finally reached a settlement agreement, may have been surprising, it was not unforeseeable. Defen-

dants' willingness to enter into an agreement that did not include precautions in case of such an event was the result of a voluntary decision in the course of the difficult settlement negotiations that took place in this case. They are bound by that decision, as well as the others that ultimately led to their acceptance of the settlement agreement.

## Conclusion

Co-defendants AIICO's and the Hospital's request that we set aside Judgment is **DENIED.** Defendants are **ORDERED** to deposit with the Clerk of the Court the settlement amounts already due.

**SO ORDERED.**