BESOSA, District Judge.
Plaintiff Vitalife, Inc. ("Vitalife") requests that the Court enforce the settlement agreement between Vitalife and defendant Omniguide, Inc. ("Omniguide"). (Docket No. 51.) For the reasons set forth below, Vitalife's motion to enforce the settlement agreement is DENIED .
*33 I. Background
On May 23, 2018, Vitalife commenced a civil action against Omniguide in the Commonwealth of Puerto Rico Court of First Instance, San Juan Superior Division ("Commonwealth of Puerto Rico litigation"). Docket No. 19, Ex. 1; see Vitalife, Inc. v. Omniguide, Inc., Civil No. SJ2018-CV-3440. Vitalife amended its complaint on the following day, setting forth two causes of action. Id. First, Vitalife alleged that Omniguide violated an exclusive distribution agreement in contravention of Puerto Rico Law 75, P.R. Laws. Ann. tit. 10, sections 278 et seq . ("Law 75"). (Docket No. 19, Ex. 1. at p. 7.)[1] Second, Vitalife avers that Omniguide failed to perform the exclusive distribution agreement in good faith. Id.; citing P.R. Laws Ann. tit. 10, § 3375.
Two days before the Commonwealth of Puerto Rico litigation commenced, Omniguide filed suit against Vitalife in the United States District Court for the District of Massachusetts ("District of Massachusetts litigation." Docket No. 10 at p. 2; citing Omniguide, Inc. v. Vitalife, Inc., Case 18-11073. In the District of Massachusetts litigation, Omniguide requested a declaratory judgment confirming that "Omniguide has a valid right to sell its products directly to customers in Puerto Rico." (Docket No. 10, Ex. 1 at p. 2.)
On June 5, 2018, Omniguide removed the Commonwealth of Puerto Rico litigation to this Court pursuant to 28 U.S.C. section 1446. (Docket No. 1.)[2] The parties engaged in unduly contentious motion practice concerning discovery disputes. See Docket Nos. 8, 10, 21, 29, 32, 36, 40, 42, 43 and 45. The Court intervened, striking nine motions from the docket and prohibiting additional filings until the parties submitted their Joint Case Management Memorandum. (Docket No. 46.) Ultimately, Vitalife and Omniguide filed the Joint Case Management Memorandum three months after the notice of removal. (Docket No. 47.)
Vitalife requests that the Court enforce a settlement agreement that the parties allegedly entered into prior to the September 28, 2018 initial scheduling conference. (Docket No. 51.) Omniguide opposed Vitalife's motion, contending that "the parties did not reach a settlement agreement." (Docket No. 54 at p. 4; Docket No. 62.) The Court agrees. Because there is no settlement agreement to enforce, Vitalife's motion is DENIED .
II. Settlement Agreements Pursuant to Puerto Rico Law
Puerto Rico contract law controls the Court's analysis of settlement agreements in diversity cases. See Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008) ("In this diversity case, we *34 apply Massachusetts contract law [to the] district court's determination that an enforceable settlement agreement existed."). The Court possesses the authority to enforce settlement agreements "before the original suit is dismissed." Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999). Vitalife shoulders the burden of demonstrating the existence of a valid, enforceable settlement agreement. Muñiz-Olvari v. Stiefel Labs, Inc., 496 F.3d 29, 38 n. 7 (1st Cir. 2007) ("It is basic law that in a contract case, the plaintiff has the burden of proof to show that there was a contract and a breach.").
Article 1709 of the Puerto Rico Civil Code defines settlement agreements as contracts of compromise. P.R. Laws. Ann. tit. 31, § 4821. By entering into a contract of compromise, "each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted."Id. A contract of compromise is established when: "1) the parties consent; 2) the object of the contract is the controversy between the parties; and 3) the cause for the contract consists of the elimination of the controversy through reciprocal concessions." Caraballo Cordero v. Banco Financiero, 208 F.Supp.2d 185, 190 (D.P.R. 2002) (Casellas, J.); citing Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860 (1995).
Settlement agreements are subject to the general rules of contract interpretation. Citibank Global Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 27 (1st Cir. 2009). Article 1213 of the Puerto Rico Civil Code provides that "a contract has three elements: consent, a definitive (and legal) object, and consideration." TC Invs., Corp. v. Becker, 733 F.Supp.2d 266, 278 (D.P.R. 2010) (Besosa, J.) (citation omitted); see P.R. Laws Ann. tit. 31, § 3391. A valid contract pursuant to Puerto Rico law requires consent from both parties, resulting in a "meeting of the minds." Bianchi-Montana v. Crucci-Silva, 720 F.Supp.2d 159, 165 (D.P.R. 2010) (Besosa, J.) (holding that "a meeting of the minds [gives] rise to an obligation, situation, or state of law resulting from an agreement, and that created certain expectations on the basis of which the parties acted") (quoting Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508, 517 (1998) ). "Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." Marrero-García v. Irizarry, 33 F.3d 117, 122 (1st Cir. 1994) (quoting Laws of P.R. Ann. tit. 31, § 5141).
III. Discussion
The record demonstrates that although the parties stood on the precipice of a settlement agreement, they failed to achieve a meeting of the minds. See K-Mart Corp. v. Davis, 756 F.Supp. 62, 66 (D.P.R. 1991) (Laffitte, J.) (finding that the parties did not reach a final contract because the text of the agreement evidenced the defendant's intent not to be bound until the parties had finalized negotiations). Vitalife and Omniguide's outward manifestations, not their subjective intent, inform the Court's analysis. See Bushkin Associates, Inc. v. Raytheon Co., 815 F.2d 142 (1st Cir. 1987) ("Contracts depend on objective manifestations of consent and not on uncommunicated subjective expectations."). Consequently, only the communications between Vitalife, Omniguide and the Court are relevant. What the parties thought or believed to have occurred are immaterial.
A. There is No Settlement Agreement to Enforce
The parties participated in a telephone settlement conference on September 27, 2018. (Docket No. 51, Ex. 11.) Vitalife contends *35 that the parties agreed to settle all claims in exchange for:
Omniguide's repurchase of Vitalife's CO2 laser for $40,000.00, without any warranties and based on 'as is, where is' terms, plus a cash payment of $70,000.00, plus the exchange of mutual general releases.
(Docket No. 51, Ex. 12 at p. 5.) Omniguide, however, asserts that it agreed to purchase the laser "as is" with "assurance from Vitalife that it was in good working condition." (Docket No. 62, Ex. 1 at p. 3.)
The initial scheduling conference occurred on September 28, 2018. (Docket No. 48.) Although Vitalife "[thought] the parties reached a settlement," Omniguide stipulated that "[t]here [was] still a small part of the whole thing related to an equipment that is going to be shipped to the company. And depending on that, [the case] will be closed." (Docket No. 61 at p. 2.) The Court granted Vitalife's request for 30 days to finalize the terms of the settlement agreement. (Docket No. 48; Docket No. 61 at p. 4.) Omniguide anticipated that the parties would file "separate motions for voluntary dismissal in Massachusetts and Puerto Rico." (Docket No. 61 at p. 4.)
Vitalife's contention that a settlement "agreement was recorded in the Court's Minute" is misguided. (Docket No. 51 at p. 8.) The mere mention of an "agreement" in the minute entry is no substitution for the memorialization of a contract. (Docket No. 51.) Had a settlement agreement existed on the day of the initial scheduling conference, Vitalife would not have requested an additional "30 days to finalize the terms and inform the Court." (Docket No. 48.)
Instead of submitting the "finalized" terms to the Court, Omniguide and Vitalife identified two points of contention. First, the shipment and condition of the laser remained subject to further negotiation. Id. at p. 2. Second, the parties conditioned settlement of this action on the simultaneous dismissal of the District of Massachusetts litigation. Id. at p. 4. Concurrence on some terms, but not others, negates the existence of a settlement agreement between Omniguide and Vitalife. SeeShelly v. Trafalgar House. Pub., 973 F.Supp. 84, 88 n. 10 (D.P.R. 1997) (Domínguez, J.) ("In the case where the parties have committed themselves to some major terms, but some terms will remain to be negotiated, there is no contract as to the ultimate objective.") (internal quotation omitted); Inter-Island Ferry Sys. Corp. v. P.R. Ports Auth., Case 15-3057, 2017 WL 4990556 *4, 2017 U.S. Dist. LEXIS 181805 *11 (D.P.R. Oct. 31, 2017) (McGiverin, Mag. J.) ("Under general contract law principles, no contract exists where the parties fail to agree on all the essential terms or where some are too indefinite to be enforceable.") (citation omitted).
Vitalife mistakes negotiations in furtherance of a settlement agreement with a contract of compromise. Compare Satellite Broadcasting Cable, Inc. v. Telefónica de España, S.A., 807 F.Supp. 210, 216 (D.P.R. 1992) (Pérez-Giménez, J.) ("It is evident that further negotiations, including the negotiation of important contractual clauses, as well as certain authorizations, were necessary before the negotiations produced an enforceable contract.") with Morales v. Hosp. Hermanos Meléndez, 447 F.Supp.2d 137, 142 (D.P.R. 2006) (Casellas, J.) ("[E]very party to the settlement agreement had imparted its consent thereto ("meeting of the minds") and, consequently, a contract came into existence."). Vitalife's motion is based on a false premise: that the parties arrived at a meeting of the minds. The record establishes that the parties failed to finalize the terms of the settlement agreement. Accordingly, Vitalife's motion to enforce the settlement agreement is DE NIED
*36 . Vitalife's motion for an evidentiary hearing is also DENIED.
IV. Conclusion
For the reasons set forth above, Vitalife's motion to enforce the settlement agreement and its motion requesting an evidentiary hearing are DENIED . (Docket No. 51.)
IT IS SO ORDERED .

Law 75, also known as the Dealers' Contract Law, serves "to protect the interest of commercial distributors working in Puerto Rico." Gemco Latinoamerica, Inc. v. Seiko Time Corp., 623 F.Supp. 912, 918 (D.P.R. 1985) (Laffitte, J.); P.R. Laws Ann. tit. 10, §§ 278 et seq. The statute provides that:
[in the absence of a] clause reserving to the parties the unilateral right to terminate the existing [distribution] relationship, no principal or grantor may directly or indirectly perform an act detrimental to the established relationship or refuse to renew said contract in its normal expiration, except for just cause.
P.R. Laws Ann. tit. 10, § 278(a).

Omniguide invokes this Court's diversity jurisdiction, alleging complete diversity of citizenship among the parties, and that the amount in controversy exceeds $75,000. Docket No. 1 at p. 5; citing 28 U.S.C. § 1332. The Court is satisfied that, based on the allegations set forth Vitalife's amended complaint, diversity jurisdiction exists in this civil action.